UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MEKEA LYN RADICCHI,

                              Plaintiff,

v.                                                                   3:14-CV-0296
                                                                         (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                              Defendant.
_____

APPEARANCES:                                               OF COUNSEL:

LAW OFFICE OF HARRY J. BINDER            CHARLES E. BINDER, ESQ.
AND CHARLES E. BINDER, P.C.
  Counsel for Plaintiff
60 East 42nd Street, Suite 520
New York, New York 10165

U.S. SOCIAL SECURITY ADMIN.               REBECCA H. ESTELLE, ESQ.
OFFICE OF REG'L GEN. COUNSEL - REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Mekea Lyn Radicchi ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 8, 9.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born on November 22, 1977. (T. 164.) She completed high school and some college. (T. 180.) Plaintiff worked in retail. (T. 180.) Generally, Plaintiff's alleged disability consists of Parkinson's disease, anxiety and depression. (T. 179.) Plaintiff amended her original alleged disability onset date of January 1, 2008 to September 1, 2010 at the hearing. (T. 39.) Plaintiff's date last insured is September 30, 2010. (T. 175.)[1]

### B.     Procedural History

On April 20, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("SSD"). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 12, 2012, Plaintiff appeared before ALJ Bruce S. Fein. (T. 34-66.) On November 16, 2012, ALJ Fein issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 17-29.) On January 17, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

---

[1] "Generally, if a person otherwise eligible to receive [disability] becomes disabled prior to their date last insured, they receive ... benefits until ...:death, retirement ... or termination of the disability." *Dutcher v. Astrue,* No. 09-CV-1161, 2011 WL 1097860, at *9 (N.D.N.Y. April 29, 2011) (citing 42 U.S.C. § 423). Conversely, if disability is not established prior to the date last insured, even if the individual is subsequently determined disabled, it "ha[s] the practical effect of foreclosing receipt of any benefits ...." *Id.,* 2011 WL 1097860, at *2.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following two findings of fact and conclusions of law. First, the ALJ found that Plaintiff met the insured status through September 30, 2010 and had not engaged in substantial gainful activity since her alleged onset date. (T. 22.) Second, and lastly, the ALJ found that Plaintiff had the medically determinable impairments of Parkinson's disease and status post right fifth metatarsal fracture; however, through the date last insured Plaintiff did not have a severe impairment or combination of impairments. (T. 22-23.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly weigh the evidence of her treating physicians and erred in finding Plaintiff had no severe impairments prior to her date last insured. (Dkt. No. 8 at 7-11 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility. (*Id.* at 10-12.)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ's step two finding was proper. (Dkt. No. 9 at 4-8 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.  ANALYSIS

### A.  Whether the ALJ Failed to Properly Weigh Evidence at Step Two

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 8 at 7-11 [Pl.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ erred in his step two severity determination that Plaintiff's Parkinson's disease was "not severe," because he "failed to indicate what weight, if any, was given to the opinions from [the] treating neurologist." (*Id.* at 7.)

At step two of the sequential analysis, the ALJ must determine whether the Plaintiff has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A finding of not severe is appropriate when an impairment, or combination of impairments, "does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. 20 C.F.R. § 404.1521(b)(3). "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue,* No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue,* No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar.27, 2008)). If the ALJ determines at step two that "[a claimant] do[es] not have any impairment ... which significantly limits [her] physical or mental ability to do basic work activities, [the Commissioner] will find that [the claimant] do[es] not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520(c).

Here it is critical to determine not only if Plaintiff's Parkinson's disease was a severe impairment, but if so, whether that impairment met the requirements of 20 C.F.R. § 404.1520(c) before Plaintiff's date last insured. This decisive question cannot be answered without a proper analysis of the medical opinions in the record.

The medical record consists of treatment notes and opinions from Plaintiff's treating neurologists, Irene Richard, M.D. and Jeffery Ribner, M.D. (*see* T. 243-257, 282-287, 292-298, 299, 300-306.) The record also contains treatment notes from Plaintiff's primary care provider, Tali Reeis-Martin, M.D. and orthopedic surgeon, Christine Blonski, D.O. (*see* T. 264-276, 258-263, 277-281.)

Dr. Richard diagnosed Plaintiff with Parkinson's disease in June 2007. (T. 286.) At that time Dr. Richard observed Plaintiff's symptoms, which included; mild hypomimia[2], rigidity of the right arm, rigidity of the right leg to a lesser extent, and impaired right finger and right foot tapping. (*Id.*) Dr. Richard concluded Plaintiff's symptoms, were "mild enough to hold off on medication." (*Id.*)

During this time, Plaintiff also sought treatment from a local neurologist, Dr. Ribner. In September of 2007 he observed cogwheeling at Plaintiff's right elbow[3], mild postural tremor without a resting component, minimal tremulousness on the left, and intact fine motor movements. (T. 246.) In October 2007 Dr. Ribner observed good strength, minimal tremulousness on the left, mild cogwheeling at the right elbow, mild postural tremor, and good fine motor movements. (T. 245.) He also observed Plaintiff's

---

[2] Decreased facial expression, see http://www.parkinson.org/Parkinson-s-Disease/PD-101/How-do-you-know-if-you-have-PD-

[3] The 'pullback,' jerky or ratcheting effect in an arm or leg that the doctor perceives when moving a patient's rigid limb, thought to be related to tremor superimposed on limb rigidity. http://parkinsons.about.com/od/glossary/g/cogwheeling.htm

symptoms were mild enough to hold off on treatment, but increased Plaintiff's prescription of Mysoline[4] from 50mg to 250mg. (*Id.*)

Plaintiff saw Dr. Richard again in January of 2008. Dr. Richard observed Plaintiff was "stable" and "not in need of symptomatic treatment." (T.284.) Plaintiff did not seek treatment from Dr. Richard again until February 8, 2011, approximately five months after her date last insured.

Between January 2008 and February 2011, the only pertinent medical evidence in the record consists of Plaintiff's June 2010 visit to establish care with a new primary care physician, Tali Reeis-Martin, M.D.[5] During her physical examination, Dr. Reeis-Martin observed right sided upper and lower extremity tremor and weakness. (T. 266.) She noted right lower strength of 4/5 and left lower strength of 5/5. (T. 267.) She detected right upper extremity strength of 3/5. (*Id.*) She further observed tremors were more pronounced in Plaintiff's right arm than left arm. (*Id.*)

On February 8, 2011 Plaintiff sought treatment from Dr. Richard. Dr. Richard observed an action tremor, described as "mild-moderate bilaterally." (T. 283.) She further noted Plaintiff had no resting tremor, mild rigidity of the right upper extremity, moderately to severely reduced finger tapping on right and "perhaps" mildly impaired on left. (*Id.*) Dr. Richard started Plaintiff on the medication Azilect for treatment of symptoms. (*Id.*) In June 2011 Cheryl Deelye, N.P., with Dr. Richard's office, evaluated

---

[4]  Primidone (generic name) is used alone or in combination with other medicines, to control seizures in the treatment of epilepsy. This medicine is an anticonvulsant that works in the brain tissue to stop seizures.
http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011836

[5]  In February 2009 Plaintiff fractured her right fifth metatarsal. (T. 258-263, 277-281.) The ALJ found this impairment to be not severe at step two as well; however, Plaintiff does not assert this finding was in error.

Plaintiff. Nurse Deeley noted Plaintiff's symptoms had not improve; and further, Plaintiff's left sided symptoms had increased. (T. 294.) In October 2011 Plaintiff met with Dr. Richard who observed mild rigidity in Plaintiff's right upper extremity, moderate reduced finger and foot taps on rights, "perhaps" mildly reduced on the left, and dystonic posturing of Plaintiff's right upper extremity when holding hands outstretched. (T. 296.)

On January 6, 2012 Dr. Richard opined that Plaintiff's symptoms, due to Parkinson's disease, caused her to be "unable to work since approximately [September 30, 2010]." (T. 297.) In August 2012 Dr. Richard completed a medical source statement. Therein she stated Plaintiff suffered from Parkinson's disease and that her prognosis was "fair." (T. 300.) She listed Plaintiff's primary symptoms as fatigue, impaired use of the right arm, impaired dexterity with stiffness, slowness, and anxiety. (T. 301.) Further, in a normal competitive five-day a week work situation, Plaintiff needed to "move as needed based on how she feels." (T. 302.) Plaintiff would be unable to stand or walk for "prolonged" periods. (*Id.*) Plaintiff would be able to sit, but "should get up and move." (*Id.*)

Regarding exertional limitations, Dr. Richard observed Plaintiff could frequently lift and carry up to five pounds; could occasionally lift and carry five to twenty pounds; and could never lift and carry over twenty pounds. (T. 303.) Mentally, Dr. Richard opined Plaintiff's symptoms were "severe enough to [frequently] interfere with attention and concentration," because stress and anxiety increased her tremors. (T. 304.)

According to Dr. Richard, Plaintiff had significant manipulative limitations affecting her right upper extremity more than her left upper extremity. (T. 305.) Specifically, she had moderate limitations in grasping, turning, twisting objects and

9

using fingers/hands for fine manipulations. (*Id.*) She opined Plaintiff had minimal limitations in using her arms for reaching. (*Id.*)

Dr. Richard stated Plaintiff would have "good days" and "bad days," which was "very typical and depends on stress, sleep and medications." (*Id.*) Overall, Dr. Richard opined that Plaintiff was "unable to work" an eight hour workday. (T. 304.)

On September 25, 2012 Dr. Richard wrote a letter concerning Plaintiff's conditions. (T. 299.) Therein Dr. Richard stated Plaintiff's conditions were disabling as of September 30, 2010. She based this assertion on Plaintiff's self-reports, and "on the progression of symptoms that were documented at the [February 8, 2011] visit." (T. 299.) To be sure, a determination of disability is reserved to the Commissioner, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the plaintiff is] disabled." 20 C.F.R. § 404.1527(d)(1). However, the question at step two is not ultimately of disability, but a question of whether or not the Plaintiff has a medically determinable condition that is "severe."

The ALJ determined Plaintiff's medically determinable condition of Parkinson's disease was not a severe impairment. (T. 23.) However, as the Plaintiff argues, the ALJ "failed to indicate what weight, if any, was given to the opinions from treating neurologist, Dr. Richard." (Dkt. No. 8 at 7 [Pl.'s Mem. of Law].) Although the ALJ provided a detailed credibility determination at step two, which included a discussion of the medical evidence, he did not conduct an independent analysis of the medical evidence as it related to his step two determination beyond the boilerplate statement

that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527." (T. 23.) This was in error.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The following factors must be considered by the ALJ when deciding how much weight an opinion should receive: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Id.* The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.* Failure to provide good reasons for failing to credit the opinion of a treating physician constitutes grounds for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

The Defendant argues even if the treating physician rule applied, the ALJ was proper in not affording Dr. Richard's opinion controlling weight, because it was "contradicted by other medical evidence or overwhelmingly compelling non-medical evidence." (Dkt. No. 9 at 6 [Def.'s Mem. of Law], citing *Woodmancy v. Colvin*, 577 Fed. Appx. 72, 2013 WL 429039, *12 [2d Cir. 2014].) However, this argument assumes that the ALJ afforded Dr. Richard's opinion weight, which is not apparent from the ALJ's decision in this case. In *Woodmancy* the ALJ provided specific weight to the opinions of plaintiff's doctor in question, here, the ALJ provide no analysis or weight to Dr. Richard.

The Defendant further argues that the "lack [of medical evidence] overwhelmingly indicated that Plaintiff's Parkinson's disease did not impose work-related functional

limitations" and therefore Dr. Richard's opinion is not controlling. (Dkt. No. 9 at 6 [Def.'s Mem. of Law].) Again, the ALJ made no such finding. The ALJ would have to conduct a proper analysis of the medical opinion in the record in order to make such a conclusion. This Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Martinbeault v. Astrue*, 2009 WL 5030789, *5 (N.D.N.Y. Dec. 14, 2009) (citing *Grogan v. Barnhart,* 399 F.3d 1257, 1263 [10th Cir. 2005]); *see also Snell,* 177 F.3d 134 (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962)); *see also Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999).

This Court cannot determine whether the ALJ's step two analysis was supported by substantial evidence without first knowing how the ALJ came to his conclusion. Therefore, this matter should be remanded for a proper analysis of all medical evidence in the record, including, but not limited to, the medical opinion of Dr. Richard. On remand, the ALJ should provide a thorough analysis of the weight afforded to the Plaintiff's medical sources and his reasoning for doing so in accordance with 20 C.F.R. § 404.1527.

### B.     Whether the ALJ Failed to Properly Evaluate Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 8, at 11-14 [Pl.'s Mem. of Law].) The Court adds the following analysis.

As explained in Part IV.A. of this Decision and Order, the ALJ's step two determination is not supported by substantial evidence. Accordingly, the ALJ's credibility determination is not based on substantial evidence because it is not clear how

the ALJ weighed the medical opinion of the record, independent of his credibility analysis, and how those opinions factored into his credibility determination. Therefore, remand is necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that this matter is **REVERSED** and **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: June 25, 2015
Syracuse, NY

Glenn T. Suddaby
U.S. District Judge